UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-22357-CIV-GOODMAN

[CONSENT CASE]

RICHARD BOOTH,

    Plaintiff,

v.

SOUTHERN WINE AND SPIRITS OF
AMERICA, INC.,

    Defendant.
_____/

## ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING CASE

This matter is before the Undersigned on Defendant Southern Wine and Spirits of America, Inc.'s ("Southern") Motion to Dismiss Plaintiff's Complaint in Favor of Arbitration (the "Motion"). [ECF No. 9]. Plaintiff Richard Booth ("Booth") filed a response in opposition to the Motion [ECF No. 16] and Southern filed a reply in further support of its Motion [ECF No. 17]. The Undersigned has reviewed the parties' briefs and held a hearing in this matter on October 27, 2014. For the reasons outlined below, the Motion is **GRANTED** and this case is stayed pending completion of arbitration proceedings.

I.     Background

Booth filed a one-count complaint for damages under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, on June 25, 2014. [ECF No. 1]. According to the Complaint, Booth was employed by Southern for more than thirty years in various positions, including Vice President and General Manager of South Florida. [ECF No. 1, p. 2]. In that position, he earned an annual salary of about $2,000,000.00. [*Id.*]. Southern is engaged in the business of alcohol distribution, and, according to the Complaint, a significant portion of Booth's job duties involved the promotion of alcoholic beverages. [*Id.*].

Booth alleges that he developed a dependence on alcohol and in 2011 took time away from work to pursue treatment and care for his condition. [*Id.* at 1-2]. Booth took additional leave for further treatment in 2012 and 2013. He contends that Southern improperly reduced his salary, benefits, and duties when he returned to work and also alleges that he was later "constructively terminated" from employment at Southern in March 2014. [*Id.* at 3-4]. According to the Complaint, under the FMLA, Southern was required to restore Booth to a position equivalent to that he held before his 2011 leave, however, it did not. [*Id.* at 4].

Booth and Southern executed three agreements in connection with Booth's alcohol dependence and employment at Southern. First, in 2011 the parties executed a

"Return to Work Agreement," setting forth the conditions for Booth's continued employment at Southern. The Return to Work Agreement is attached as Exhibit B to the Motion. [ECF No. 9-1, pp. 6-7]. Second, in 2012 the parties executed a "Last Chance Agreement," again setting forth the conditions for Booth's continued employment at Southern. The Last Chance Agreement is attached as Exhibit C to the Motion. [ECF No. 9-1, pp. 9-11]. Third, the parties in 2013 executed an "Employment Agreement and Mutual General Release" (the "Employment Agreement"), again governing the terms of Booth's future employment at Southern. The Employment Agreement is attached as Exhibit D to the Motion. [ECF No. 9-1, pp. 13-17].

The Employment Agreement states that the parties "enter this Agreement setting forth the future terms of Booth's employment, and mutually waive any claims against each other which predate the signing of this agreement." [ECF No. 9-1, p. 13]. In addition, the Employment Agreement contains an arbitration clause that states, in relevant part:

> Booth and Southern agree that the sole and exclusive remedy for any dispute, claim or controversy arising out of this Agreement shall be a binding arbitration conducted in Miami, Florida in accordance with the Rules of the American Arbitration Association ("A.A.A.").

[ECF No. 9-1, p. 16].

The Employment Agreement also provides that it "sets forth the entire agreement between Booth and Southern with respect to the subject matter hereof, and supersedes any and all prior representations, negotiations and agreements relating

thereto." [ECF No. 9-1, p. 17]. It also states that Booth acknowledges that "he has had the opportunity to seek the advice and assistance of legal counsel or other representative with respect to the advisability of entering into this Agreement, and the meaning of its terms." [*Id.*].

II.   Analysis

    a. Booth's FMLA Claim is Subject to Arbitration.

This case presents a single FMLA claim and as such this Court's jurisdiction is based on a federal question, 28 U.S.C. § 1331, and Southern has properly brought a motion to compel arbitration pursuant to section 4 of the Federal Arbitration Act. *See* 9 U.S.C. § 4 (providing that a party aggrieved by the failure of another to arbitrate may file a motion to compel arbitration with a district court); *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009).

Congress enacted the Federal Arbitration Act ("FAA") to "declare 'a national policy favoring arbitration of claims that parties contract to settle in that manner.'" *Vaden*, 556 U.S. 49, 58 (quoting *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)). The Supreme Court has interpreted this to mean that courts must "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985).

The FAA applies to employment contracts that concern interstate commerce, and Booth has not disputed that the employment contracts at issue here are governed by the FAA. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). Under the FAA, an

4

arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

District courts consider three factors in reviewing a motion to compel arbitration:

1) Whether there is a valid, written agreement to arbitrate;

2) Whether there is an arbitrable issue; and

3) Whether the right to arbitrate was waived.

*Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.*, 670 F. Supp. 2d 1350, 1354 (S.D. Fla. 2009) (citing *Integrated Sec. Svcs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009)).

In his opposition, Booth notes that this Court should apply Florida law to interpretation of the arbitration clause. [ECF No. 16, p. 6] (citing *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Standford Jr. Univ.*, 489 U.S. 468, 475-76.). He then argues that Florida law views the arbitration clauses in the Last Chance Agreement and Employment Agreement as "narrow" arbitration clauses, and that a narrow reading of the arbitration clauses precludes a finding that his pre-existing FMLA claim, dating from 2011, is subject to arbitration. [ECF No. 16, pp. 7-8]. In addition, Booth argues that even if the Undersigned finds that the arbitration clauses are broad, his FMLA claim lacks the requisite nexus to the Last Chance Agreement or Employment Agreement necessary to make his claims subject to the arbitration clauses in those documents. [*Id.* at 8-9]. Booth does not argue that the Last Chance Agreement or Employment

5

Agreement are somehow invalid or unenforceable or that the right to arbitrate claims subject to those agreements was somehow waived.[1]

In the Undersigned's view, the Employment Agreement governs the terms of Booth's employment by Southern, and all claims related to his employment, regardless of whether they predate or postdate the Employment Agreement. It follows, in turn, that all such claims are subject to the Employment Agreement's arbitration clause. This is true whether the Employment Agreement is read broadly or narrowly.

The very first paragraph of the Employment Agreement references the prior two agreements (the Return to Work Agreement and the Last Chance Agreement), states that those prior agreements were entered into to "assist Booth in overcoming dependency issues," and also states that Booth is again ready to return to active employment following a period of "paid leave while undergoing therapy and group meetings." [ECF No. 9-1. P. 13]. The Employment Agreement also provides that the parties **mutually waive all claims that predate the Employment Agreement and states**

---

[1] Booth does argue, in a single sentence apart from his legal argument, that the "prospective waivers" in the arbitration clauses may "render them wholly unenforceable under the FMLA," which does not allow employees to waive FMLA claims. [ECF No. 16, p. 3]. However, the mere fact that one must *arbitrate* an FMLA claim does not therefore mean one has *waived* that claim. *Williams v. Eddie Acardi Motor Co.*, No. 3:07-CV-782-J32JRK, 2008 WL 686222, at *2 (M.D. Fla. Mar. 10, 2008) (requiring arbitration of FMLA claim). Booth did not pursue this theory at the hearing, however.

**that the Employment Agreement sets forth the future terms of Booth's employment**.[2] [ECF No. 9-1, p. 13]. Booth's claim that his FMLA claim stems from Southern's conduct in 2011 cannot, in light of the foregoing, exempt his FMLA claim from the arbitration clause in the 2013 Employment Agreement. To find otherwise would, among other things, render the waiver clause meaningless.

In addition, the Employment Agreement expressly states that it "**supersedes** any and all prior representations, negotiations and agreements relating" to its subject matter.[3] [ECF No. 9-1, p. 17]. It is clear that the "subject matter" of the Employment Agreement is broader than merely Booth's "future employment," as Booth argued in his opposition and at the Hearing. [ECF No. 16, p. 2]. The very fact that the Employment Agreement expressly waives **preexisting** claims severely compromises this position.[4] Booth's continued employment was contingent on his executing the

---

[2]     Had the parties specified that prior employment claims were subject to the Employment Agreement's arbitration clause, they would have undermined the purpose and enforceability of this waiver clause.

[3]     The Employment Agreement therefore governs *all* employment issues between Booth and Southern, and neither the Return to Work Agreement nor the Last Chance Agreement govern this dispute. As such, the arbitration clause in the Last Chance Agreement is no longer binding (because that entire agreement was superseded by the Employment Agreement).

[4]     In addition, this waiver severely undermines Booth's reliance on *Careplus Health Plans, Inc. v. Interamerican Med'c Ctr. Group, LLC*, 124 So. 3d 968 (Fla. 3d DCA 2013). There, the court found that the "absence of any identifiable nexus or significant relationship between [a later agreement] and claims arising from [an earlier agreement was] fatal to" a motion to compel arbitration. *Id.* at 972. Here, the Employment

7

Employment Agreement, which expressly waived prior claims Booth may have had and also expressly replaced all prior agreements (i.e., the Return to Work Agreement and the Last Chance Agreement). Issues related to Booth's employment are subject to arbitration.

Not only was Booth represented by counsel[5] in connection with the Employment Agreement, but Southern advised the Court that the negotiations with counsel lasted approximately six months. Booth did not in any way challenge this representation.

For all of these reasons, the Undersigned finds that the arbitration clause in the Employment Agreement is binding and enforceable, has not been waived, and that Booth's FMLA claim is subject to arbitration. The Motion to Compel Arbitration is **GRANTED**.

Although the Employment Agreement is called an Employment Agreement "and Mutual General Release" and contains a section entitled "Mutual Waiver and General Release," this Order does not address the enforceability of the release and does not state or imply that Booth released all claims. At the hearing, Southern made clear that its motion focused solely on the appropriate *forum* to litigate Booth's FMLA claim.

---

Agreement expressly mentions the earlier agreements and very clearly waives pre-existing claims that Booth might have against Southern. Therefore, there is a nexus between the waiver in the Employment Agreement and Booth's pre-existing FMLA claim.

[5] Booth's litigation counsel did not represent him in the negotiations which led up to the execution of the Settlement Agreement.

Southern advised that it intends to seek substantive enforcement of the release before the arbitrator. Southern's strategic plan is beyond the parameters of this Order, which takes no position on the enforceability of the release.[6]

### b. This Case is Stayed Pending Arbitration.

Pursuant to section 3 of the FAA, once a court determines that an issue may be referred to arbitration, the court shall, "on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Here, Booth has requested such a stay (as opposed to a dismissal). [ECF No. 16, p. 10]. As such, this case is **STAYED** pending completion of A.A.A. arbitration proceedings. Within two weeks (14 calendar days) of the arbitrator's final decision in this matter, the parties must file a notice in this action advising the Court of the result of arbitration and requesting that this case be dismissed and/or such further relief as may be required.

**DONE AND ORDERED** in Chambers, in Miami, Florida, October 31, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record

---

[6] At the hearing, Booth argued that the release is invalid because it is not supported by consideration. The Court takes no positon on this argument either.

9